(August 12, 1993)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL BROWN, Appellant. [601 NYS2d 282] —Judgment of the Supreme Court, New York County (Stephen Crane, J.), rendered March 18, 1991, convicting defendant, after trial by jury, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree, and sentencing him as a second felony offender, to concurrent prison terms of six to twelve years on each count, is unanimously affirmed.

On May 12, 1990, two police officers observed defendant and one John Smith exchange money and vials of cocaine. The evidence at trial, credited by the jury, was that defendant sold eight vials of cocaine to Smith.

Pursuant to this Court's *sua sponte* request, the parties submitted additional briefs on a discrepancy between the written indictment and the People's proof at trial. The indictment charged the defendant with criminal sale of a controlled substance in the third degree, by alleging, *inter alia,* "The defendant, in the County of New York, on or about May 12, 1990, knowingly and unlawfully sold to *a police officer* known to the Grand Jury, a narcotic drug, to wit, cocaine." (Emphasis added.)

During his summation, the defense counsel pointed out to the jury that the prosecutor had read from the indictment. He reiterated the allegations of the indictment regarding the identity of the buyer as a police officer and noted:

"Now, in the testimony in evidence in this case it has to be clear that Mr. John Smith, who was arrested by the police, was not a police officer. So, if you're supposed to decide beyond a reasonable doubt that Mr. Brown—does the evidence show that Mr. Brown sold a drug, to wit, cocaine to a police officer?

"How can you do that? On the—if the English language means anything, which I suggest it surely does, this is seven months down the road, and this can be no surprise to anybody in this case because this was read to you in the opening statement by the prosecutor.

"Seven months down the road, and it cannot be that you can infer that John Smith was a police officer. That's out of the window."

After charging the jury on the general principles of a criminal case, the court read the first count of the indictment which included the allegation the buyer was a police officer. It

then charged the jury that the People had to prove, beyond a reasonable doubt, each of three elements; one, that the defendant sold certain items in evidence on May 12, 1990; two, that what defendant sold was, in fact, cocaine, a narcotic drug; three, that the defendant knowingly and unlawfully sold such cocaine. The court, at no time, other than in reading count one of the indictment, mentioned or instructed the jury that the People were obligated to prove that the buyer was a police officer. Neither did the court point out that the testimony at trial indicated Smith was not a police officer. After the charge, defense counsel objected, telling the court that "you have to say that they [the People] have to prove that he sold it to a police officer". The court noted that exception for the record.

For the first time, at the sentencing, the defendant argued that he had been denied his due process right to fair notice by the incorrect count of the indictment. While he contended at that time that: "The jury is charged that they don't have to find [a sale to] a police officer", the charge given by the court did *not* affirmatively deal with the status of John Smith, but, as set forth above, simply told the jury the elements of the crime the People were required to prove. Any constructive amendment of the indictment was done *sub silentio.* At the sentencing, the court stated that when the defendant had raised the issue earlier "I cited you some cases that amount to the proposition that the identity of the buyer on a sale of controlled substance charge is immaterial and I think—I don't remember how many cases I cited and I do believe my memory serves correctly that we went rather deeply into the issue of prejudice and the Court concluded that there in fact had been none. But the record of that decision and those proceedings speaks for itself and I'm simply going to refer the reader of this transcript back to that decision".

However, perusal of the record shows that after the court began to read the first count of the indictment to the jury, the prosecutor requested a side-bar, but what transpired was not transcribed and *no* discussion of the issues, mentioned by the court at sentencing, appears in the record.

CPL 200.70 (1) authorizes the amendment of an indictment, by stating, *inter alia:* "At any time before or during trial, the court may, upon application of the people and with notice to the defendant and opportunity to be heard, order the amendment of an indictment with respect to defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like, when such an amendment does not change the theory or theories of the prosecu-

tion as reflected in the evidence before the grand jury which filed such indictment, or otherwise tend to prejudice the defendant on the merits."

While the record does not expressly show either an application by the People or an order by the court amending the indictment, the colloquy at the sentencing strongly indicates that the prosecutor made such an application at the side-bar during the charge. The side-bar was not recorded but the court's recollection during the sentencing concerning its discussion of the identity of the buyer and possible prejudice to the defendant was not controverted by the defendant's counsel at that time. Further, even assuming that such a formal motion was not made at the side-bar, the defendant did not object on that basis before the trial court and thus, this issue has not been preserved. In any event, the Court of Appeals has approved of the constructive amendment of an indictment, in the proper circumstances, even without a formal motion by the People (see, People v Spann, 56 NY2d 469, 471-472).

Grand Jury minutes submitted herein show that defendant was indicted for selling cocaine to John Smith who was not described as a police officer before that body. Consequently, the constructive amendment by the court did not "change the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed such indictment". (CPL 200.70 [1].) In any event, the legal theory of the offenses, as explained by the court to the jury, was simply that defendant sold cocaine and possessed additional cocaine with intent to sell it. The identity of the buyer did not alter this theory of the prosecution in the slightest. "Not every fact mentioned in an indictment is essential to establish the defendant's guilt of the crime charged, and thus it is not necessary in every case that the People prove all acts alleged in the indictment when the remaining acts alleged are sufficient to sustain a conviction" (People v Rooney, 57 NY2d 822, 823).

Contrary to defendant's position, the identity of the person to whom the defendant sold drugs is not a material element of the offense with which defendant was charged (see, People v Spann, supra, at 473 ["The particular nature of the property stolen is not, by statute, a material element of the crime of robbery."]). The Court of Appeals has noted in another case involving the sale of narcotics: "Nor is it material that the indictment charged defendant with selling drugs to [a police officer], not [an informant]. Quite simply, the corpus delicti of the crime charged was the transfer of a controlled substance (Penal Law, § 220.00, subd 1); the person to whom that sub-

stance was transferred was immaterial to this conviction (see *People v Cunningham,* 48 NY2d 938, 940-941)." *(People v Feldman,* 50 NY2d 500, 504.)

The question remaining is whether the constructive amendment of the indictment prejudiced defendant. In asserting that this occurred, the defendant alleges that the People's failure to amend the indictment before trial deprived him of fair notice. Further defendant claims the delay prejudiced him since the subsequent amendment of the indictment "diminished the effectiveness of counsel's summation".

The record does not bear out defendant's claim of prejudice. Initially, the felony complaint explicitly noted that "[d]eponent observed the defendant exchange a quantity of vials of crack/cocaine for a sum of U.S. currency with *an apprehended other*" (emphasis added). The Bill of Particulars served by the People indicated that defendant was arrested after he was observed exchanging vials of crack for money "with *an apprehended individual*" (emphasis added). Defendant's counsel at trial heard the testimony of the arresting officers at the suppression hearing on December 12, 1990, that John Smith was arrested after the observations and after he discarded vials of cocaine he had just bought from defendant. The defense counsel also received Grand Jury testimony of the officers as *Rosario* material before the suppression hearing, and received other *Rosario* material before the trial. During the trial, counsel did not ask a single question of any witness which indicated he was "surprised" or unaware that the People's proof involved a sale to an individual who was also arrested, not a police officer. When counsel, *for the first time,* in his summation, addressed the flaw in the first count of the indictment, he clearly was aware that it was a minor error. He read the first count to the jury again, and then noted *(see,* excerpt, *supra)* that "in the testimony in evidence in this case, it has to be clear that Mr. John Smith, who was arrested by the police, was not a police officer". He contrasted these versions, and asked the jury "does the evidence show that Mr. Brown sold a drug, to wit, cocaine *to a police officer?*" (Emphasis added.) Thus, far from being a source of prejudice, the erroneous phrase "to a police officer" was actually used by the defendant to his advantage. Further, this argument was only a minor part of the defense summation which really contended, at much greater length, that it was Smith who made the sale to defendant and that the officers were unreliable in their testimony that defendant made the sale.

Finally, contrary to defendant's contention, we find that he

was not denied his constitutional right to present a defense by the trial court's *in limine* ruling which permitted the People to introduce evidence that defendant possessed $313 at the time of his arrest, if the defendant introduced evidence that the purported buyer, Smith, possessed $40. Possession of a large sum of money is admissible, where defendant, as here, is charged with possession with intent to sell, since the money would be probative of the intent element of the offense. As the trial court recognized, if the defendant had undertaken to show Smith was the seller based only on the amount of money found on Smith, then, in order not to mislead the jury, the People had to be allowed to present relevant and proper rebuttal evidence as to the amount of money possessed by defendant. Further, we find that the prosecutor's summation did not deprive defendant of a fair trial. Concur—Murphy, P. J., Milonas, Ross and Asch, JJ.